UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE – NASHVILLE DIVISION

| | |
|---|---|
| MARIETTA MCCLENDON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NORTH CAROLINA MUTUAL LIFE INSURANCE COMPANY,<br><br>　　　　Defendant. | Case No.: _____<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

　　　　Plaintiff Marietta McClendon, by and through undersigned counsel, files this class action complaint against Defendant North Carolina Mutual Life Insurance Company on behalf of herself and all others similarly situated, as described below.

## NATURE OF THE CASE

　　　　1.　　This case is about an insurance company, North Carolina Mutual Life Insurance Company ("NCM"), that deceives its policyholders and beneficiaries by breaking promises made to them and cheats them out of money it owes them. In so doing, NCM is taking advantage of – and stealing from – grieving families dealing with the loss of a loved one.

　　　　2.　　In 2009, NCM acquired over 52,000 life insurance policies (the "Assumed Policies") from several Alabama insurance companies. Many of the Assumed Policies had "policy loans" taken out against them by the owners of the policies.

　　　　3.　　In a life insurance policy loan, a policyholder takes out a loan against her life insurance policy. The policy loan differs from a regular bank loan in that the borrower does not necessarily need to pay back the loan – instead, when the policyholder dies, the principal loan amount plus accrued interest ("loan balance") is deducted from the life insurance proceeds, and

the beneficiary of the policy receives the remaining amount. Although not required, a policyholder does have the option to make payments towards paying back the policy loan – and if she does make such payments, they are to be applied to paying down the loan balance, just as they would be with a regular bank loan.

4. Here, NCM cheated its policyholders and beneficiaries in two ways: first, it charged interest rates on the policy loans that were higher than the promised interest rates; and second, when policyholders made payments towards paying back their policy loans, NCM pocketed the money but did not apply it to reduce the loan balance. In combination, this compounded the damage – not only did the loan balance not decrease with each payment, but NCM charged higher-than-promised interest on the unreduced loan balance, causing the loan balance to increase that much faster.

5. Then, when the policyholder died, NCM deducted the fraudulently inflated loan balance from the life insurance proceeds before paying out what was left to the beneficiary, thereby cheating the beneficiary out of money owed to them. And when grieving family members inquired as to why the life insurance payout was so much lower than promised, NCM lied to them and refused to provide them an accounting of how it had calculated the amount paid out.

6. In sum, NCM misled and cheated policyholders and their beneficiaries out of money at every step of the way – they pocketed loan payments without applying them to the loan balance, then they charged higher-than-promised interest on the unreduced loan balance (which in turn caused the loan balance to increase even more rapidly since the interest was being charged on an increasing, rather than a decreasing, amount), and then they subtracted the whole

overinflated loan balance from the policy proceeds at the end, underpaying beneficiaries with no accounting or explanation for the calculations.

7. In so doing, NCM breached its contract with the policyholders and intended beneficiaries of the Assumed Policies. Additionally, NCM's conduct violates the North Carolina Unfair or Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.*, and unjustly enriched NCM at the expense of its policyholders and beneficiaries, including Plaintiff and Class Members.

8. This case presents the prototypical situation for class treatment. NCM's conduct is uniform as to all Class Members. The application of shared law to this uniform course of conduct will determine liability for the class as a whole, ensuring that the rights of thousands of consumers are vindicated through the efficiency of a single trial.

## PARTIES

9. Plaintiff Marietta McClendon is a citizen of Tennessee who resides in Williamson County, Tennessee.

10. Defendant North Carolina Mutual Life Insurance Company is a foreign corporation with its principal place of business in Durham County, North Carolina. Its appointed agent for service of process is Charles T. Francis, 411 W. Chapel Hill Street, Durham, North Carolina 27701.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d). Diversity jurisdiction exists as NCM is a citizen of a state other than the state of which Plaintiff is a citizen. Plaintiff, on behalf of herself and the Class, seeks more than $5,000,000, and has a good faith basis to believe that more than $5,000,000 is at issue in this case.

12. Venue in this case is proper under 28 U.S.C. § 1391 in this Court. NCM does business in this judicial district. NCM has a claims department and payment center located in Nashville, Tennessee. NCM was subject to personal jurisdiction in this judicial district at the time this action was commenced, and is deemed to reside in this judicial district.

13. Venue in this district best serves the convenience of parties and witnesses, including Plaintiff, who resides here, and NCM, which has facilities here and does business here, as well as the interest of justice. IT would work no hardship for NCM to litigate this case in this district.

## APPLICABLE LAW

14. North Carolina law applies to all claims in this action.

15. Plaintiff, who asserts her claims against NCM, a North Carolina corporation, seeks damages and equitable relief on behalf of herself and all other persons and entities similarly situated, under the laws of the State of North Carolina.

16. The Agreement for Assumption Reinsurance ("Assumption Agreement") by which NCM assumed the Assumed Policies indicates that North Carolina law applies to NCM's obligations to Plaintiff and the Class. The Agreement states that the law of the state where the obligation was created applies, and the obligation to Plaintiff and Class Members arose in North Carolina because NCM is located in North Carolina and its relationship with Plaintiff and the Class is centered in North Carolina.

17. All of NCM's relevant business, including the formulation and execution of the unlawful practices alleged herein, occurred in or emanated from North Carolina, where NCM has its principal place of business.

18. NCM's relationship with Plaintiff and the Class is centered in North Carolina, because all of NCM's decisions, actions, omissions, and misrepresentations took place in North Carolina. NCM held its annual Policyholder Meetings in North Carolina.

19. The injury to Plaintiff and the Class occurred in North Carolina because funds that should rightly be paid to the policyholders and beneficiaries are held in North Carolina.

20. North Carolina has the most significant relationship to the events at issue here.

21. North Carolina has a materially greater interest than any other state in enforcing the rights and remedies granted to consumers under the North Carolina laws invoked in this Complaint. These rights and remedies further strong fundamental public policies of the State of North Carolina.

22. Application of North Carolina law gives Plaintiff and the Class greater protection than they would receive under other laws.

23. In light of these facts indicating North Carolina has a significant aggregation of contacts, creating state interests, such that application of North Carolina law to NCM, and to the claims of all class members, would not be arbitrary or unfair.

## FACTUAL ALLEGATIONS

24. NCM's conduct here is shot through with deception. First, it acquired the Assumed Policies by misleading an Alabama court. Then, it misled and cheated policyholders and their beneficiaries out of money at every turn: by pocketing loan payments without applying them to the loan balance, then charging higher-than-promised interest rates on the unreduced loan balances (which in turn caused the loan balances to increase even faster), and then by subtracting the whole overinflated loan balance from the policy proceeds at the end, underpaying beneficiaries with no accounting or explanation for their calculations.

## I. NCM Acquires the Assumed Policies

25. In 2009, NCM assumed over 52,000 life insurance policies from Booker T. Washington Insurance Company, Inc. ("BTW") and Universal Life Insurance Company ("ULIC")("Assumed Policies").[1] At the time of the assumption, the Alabama Insurers were in receivership proceedings in the Circuit Court of Jefferson County, Alabama.

26. The Assumed Policies were assumed pursuant to the Assumption Agreement, which states that NCM is directly liable to the policyholders and beneficiaries of the Assumed Policies, as if it had issued the policies directly.

27. Approximately 95% of the Assumed Policies were issued to Alabama residents. NCM voluntarily assumed these policies and has received a substantial benefit from this assumption.

## II. NCM's Misrepresentation to the Court and Misconduct in Administering the Assumed Policies and Policy Loans

28. The Assumed Policies were for relatively small amounts, such as $10,000, payable upon the death of an insured. Many of the Assumed Policies had policy loans taken out by the owners of the policies. Borrowers were not required to pay the loan back since it was secured by the value of the policy. Any amount owed on the policy loan would be deducted from the face value of the policy upon the death of the insured. However, many borrowers did make payments on these policy loans.

29. In the Assumption Agreement, NCM certified to the Circuit Court of Jefferson County, Alabama, Alabama Department of Insurance, and North Carolina Department of

---

[1] As a matter of background, in 2004 BTW purchased Protective Industrial Insurance Company of Alabama ("PIICO"). PIICO then merged with its subsidiary ULIC, and ULIC became the surviving entity, PIICO. PIICO then merged with its subsidiary ULIC, and ULIC became the surviving entity. BTW was ordered into rehabilitation on February 22, 2006. A few years later, on April 24, 2009, ULIC was also ordered into rehabilitation. BTW, ULIC, PIICO are collectively referred to as the "Alabama Insurers". All of the Alabama Insurers were based in Jefferson County, Alabama.

Insurance that it had in its possession all files and records deemed necessary for NCM to administer the Assumed Policies. It did not.

30. NCM did not have policy loan disclosure statements for many, if not all, of the loans it agreed to assume. Instead, in order to gain the financial benefit of servicing the assumed loans, it falsely certified it had the necessary documents when it did not.

31. These policy loans had specified interest rates in the loan documents, many of which had an interest rate of 5%. However, NCM did not apply the interest rate promised in the loan documents to the policy loans. Instead, NCM unilaterally applied a 6% interest rate to *all* policy loans from the Assumed Policies, for no reason other than, as NCM claimed, it was the "going rate" at the time. Thus, all policyholders were charged an interest rate higher than the agreed upon rate.

32. To make matters worse, payments made on the policy loans were retained by NCM and not applied to reduce the loan balances. This meant the higher than promised interest rates were charged on ever-increasing loan balances, instead of loan balances reduced by application of the loan payments, as they should have been.

33. Thus, when the life insurance proceeds were actually paid to a beneficiary, NCM paid an amount less than actually owed under the original terms of the policy and policy loan.

### III.  The McDaniel Policy and Loan

34. On June 1, 1984, Bessie McDaniel, Plaintiff's mother, purchased a $10,000 whole life insurance policy on her son, Willie C. McDaniel, Jr., from PIICO (the "McDaniel Policy"). The McDaniel Policy was designated Policy #P842300016. Plaintiff was the beneficiary of the McDaniel Policy. The premiums were regularly paid on the McDaniel Policy.

35. On December 19, 1995, Bessie McDaniel took out a policy loan in the amount of $1,533.90 against the accumulated funds of the McDaniel Policy. As memorialized in the Policy

Loan Disclosure Statement, both the annual interest rate and annual percentage rate of the policy loan were 5%.

36.     Bessie McDaniel paid the premiums and loan payments until her death on November 21, 2005. Following his mother's death, Willie McDaniel continued to make the payments on the McDaniel Policy and McDaniel Policy Loan. These payments were made by Bessie and Willie McDaniel, and were paid in-person or by mail at the Alabama Insurers' office in Birmingham, Alabama, or NCM's office in Durham, North Carolina. Loan payments were frequently made against the balance of the McDaniel Policy Loan from 1995 through 2016.

37.     Willie McDaniel passed away on March 18, 2016. Upon his death, NCM tendered a check for $4,896.46, which represented the $10,000.00 life policy, less $5,130.54 in alleged principal and interest from the McDaniel Policy Loan. Despite the terms of the McDaniel Policy Loan specifying interest at 5%, NCM applied a 6% interest rate.

38.     Willie McDaniel's son, Keevon McDaniel, sent NCM a copy of the Policy Loan Disclosure Statement, which documented the agreed upon 5% interest rate. Upon receipt of the disclosure statement, NCM still defended its decision to unilaterally apply the higher interest rate, stating that 6% was placed in its "system" because it was the "going rate" at the time for all insurance companies. NCM then decided to send a check to the Plaintiff for $299.36, purporting to represent a 1% "refund" of the difference. However, despite requests, no breakdown or meaningful explanation of the calculations was provided. This check was not cashed.

39.     NCM also claimed that no payments had been made on the McDaniel Policy Loan from 2009-2016. But, as recently as February 18, 2016, payments were made by Willie McDaniel to NCM for the policy loan. However, in an effort to retain life insurance proceeds owed to the Plaintiff, NCM did not credit these payments to the McDaniel Policy Loan. NCM

retained life insurance proceeds that should have been paid to Plaintiff by failing to properly apply the payments it received for the McDaniel Policy Loan.

40. Plaintiff requested that NCM provide a statement or some documentation as to how payments were applied and how the interest was computed. NCM refused to provide any documentation. Despite its representations to the Alabama court in the Assumption Agreement, NCM admitted that it never received the loan documents from the Alabama Insurers. NCM refused to provide a statement reflecting how it computed the amounts it eventually paid. NCM only offered to provide the documents sent to it by Keevon McDaniel.

41. On or about February 9, 2017, Plaintiffs sent by U.S. Mail, return receipt requested, additional notice to NCM of the individual and class claims set forth herein, which reasonably described the unfair or deceptive act or practice at issue and the injuries suffered.

## CLASS ACTION ALLEGATIONS

42. Plaintiff brings this lawsuit as a putative class action on behalf of herself and all others similarly situated as members of the proposed Class(es), pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3).

43. The proposed Class is defined as:

All policyholders of and recipients of the proceeds from an Assumed Policy administered by NCM against which a "policy loan" was taken out by the policyholder.

44. Plaintiff will seek certification of a "Damages Subclass" under Fed. R. Civ. P. 23(b)(3) for all Class Members who are recipients of the proceeds from an Assumed Policy and who did not receive the full amount of proceeds they were entitled to under the terms of the Policy, as well as policyholders of an Assumed Policy whose loan payments were not applied to their loan balance and who have been charged higher than promised interest rates on their overly high loan balance.

45. Plaintiff will seek certification of an "Injunctive Subclass" under Fed. R. Civ. P. 23(b)(2) for all Class Members who are policyholders of an Assumed Policy to enjoin NCM from failing to apply loan payments and from charging higher than promised interest rates going forward.

46. Excluded from the Class are (1) NCM, any entity or division in which NCM has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the judge to whom this case is assigned and any member of the judge's staff; and (3) governmental entities.

47. Plaintiff maintains the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded, further divided into subclasses, or modified in any other way.

### A. Numerosity

48. As described above, there are over 52,000 Assumed Policies. Even if only a fraction of those Assumed Policies had policy loans taken out against them, the number of potential Class Members is still enough such that joinder is impracticable.

49. The disposition of the claims of these Class Members in a single action will provide substantial benefits and efficiencies to all parties and to the Court. Class Members are readily identifiable from information and records in NCM's possession, custody, or control, and/or can readily self-identify based upon objective criteria.

### B. Typicality

50. Plaintiff's claims are typical of the claims of the Class in that Plaintiff is the recipient of the proceeds from an Assumed Policy against which a "policy loan" was taken out by the policyholder. Plaintiff, like all Class Members, has been damaged by NCM's misconduct in applying incorrect interest rates and not applying loan payments to the loan balance. The

factual bases of NCM's misconduct are common to all Class Members and represent a common course of misconduct resulting in injury to all Class Members.

### C. Adequate Representation

51. Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting consumer class actions, including insurance- and lender-fraud actions.

52. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the Class, and have the financial resources to do so. Neither Plaintiff nor her counsel has interests adverse to those of the Class.

### D. Predominance of Common Issues

53. There are numerous questions of law and fact common to Plaintiff and Class Members that predominate over any question affecting only individual Class Members, the answers to which will advance resolution of the litigation as to all Class Members. These common legal and factual issues include:

    a. Whether NCM charged interest rates that were higher than the rates promised in the original policy loan documents;

    b. Whether NCM had the necessary records and files in its possession to properly administer life insurance policies at issue;

    c. Whether NCM failed to review the policy loan documents to determine the agreed-upon interest rates;

    d. Whether NCM applied loan payments it received to the policy loan balance;

    e. Whether NCM retained the money made from charging the incorrect interest rate on policy loans for its benefit;

f.  Whether NCM retained the payments made on policy loan balances that were not applied to the correct policy loan balance for its benefit;

g.  Whether NCM failed to pay the correct amount of insurance proceeds following the death of the insured;

h.  Whether NCM breached the contracts related to the Assumed Policies;

i.  Whether NCM's conduct is unfair;

j.  Whether NCM's conduct is immoral, unethical, oppressive, unscrupulous, or substantially injurious to its customers;

k.  Whether NCM's conduct amounts to an inequitable assertion of power;

l.  Whether NCM's conduct of charging higher interest rates and failing to apply loan payments is deceptive;

m.  Whether NCM's conduct has the tendency or capacity to mislead or create a likelihood of deception; and

n.  Whether NCM violated the North Carolina's Unfair or Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 (2011) or similar statutes found to apply.

### E. Superiority

54. Plaintiff and Class Members have all suffered and will continue to suffer damages as a result of NCM's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

55. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for NCM's misconduct. Absent a class action,

Class Members will continue to incur damages, and NCM's misconduct will continue without remedy.

56. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

## COUNT ONE
## BREACH OF CONTRACT

57. All allegations and paragraphs in this complaint are incorporated by reference. To the extent necessary, this cause of action is pled in the alternative to the other causes of action.

58. Written contracts, including life insurance policies and policy loans, exist between NCM and the policyholders of the Assumed Policies.[2] The Assumed Policies and policy loan contracts are valid and enforceable contracts. The contracting parties intended to bestow a direct benefit upon the beneficiaries of the Assumed Policies. Plaintiff and Class Members are either the policyholders of the Assumed Policies or direct and intended beneficiaries of the Assumed Policies who received proceeds paid under the terms of the Assumed Policies.

59. The policyholders and recipients of proceeds from the Assumed Policies, including Plaintiff and Class Members, have performed their obligations under the Assumed Policies and associated Policy Loans.

60. NCM breached the contracts by:

    a. failing to apply the agreed-upon interest rate to the policy loans of the Assumed Policies;

---

[2] As established in the Assumption Agreement, NCM expressly assumed responsibility for all obligations and payments related to the Assumed Policies. NCM is directly liable to the policyholders of the Assumed Policies.

b.  failing to properly credit payments made to the policy loans of the Assumed Policies to the corresponding loan balance; and

c.  failing to pay the correct amount of life insurance proceeds owed under the original terms of the policies.

61. NCM's breach of contract occurred in the past and continues today.

62. Plaintiff and Class Members have been directly and proximately damaged by these breaches.

63. Wherefore, Plaintiff, on behalf of herself and the Class, seeks all compensatory damages and statutory interest owed them due to NCM's breach of contract.

## COUNT TWO
## VIOLATION OF THE NORTH CAROLINA UNFAIR OR DECEPTIVE TRADE PRACTICES ACT
## (N.C. Gen. Stat. § 75-1.1 (2011), *et seq.*)[3]

64. All allegations and paragraphs in this complaint are incorporated by reference. To the extent necessary, this cause of action is pled in the alternative to the other causes of action.

65. NCM's actions violated North Carolina's Unfair or Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq*.

66. At all relevant times, NCM was engaged in "commerce" as defined by Chapter 75 of the North Carolina General Statutes.

67. The wrongful conduct of NCM, as alleged above, took place in commerce, were unfair and deceptive, and directly and proximately resulted in damages to Plaintiff and Class Members.

68. Moreover, NCM's conduct described above is contrary to public policy, unethical, oppressive, unscrupulous, and substantially injures its policyholders and beneficiaries.

---

[3] Plaintiff reserves the right to amend this count to allege violation of any other similar consumer protection statute from any other State should the Court deem that State's law to apply.

69. Specifically, as alleged above, NCM knowingly and intentionally assumed over 52,000 life insurance policies, and the policy loans taken out against them, without having the necessary documents to administer the policies. Thus NCM knew it would break the promises made to its policyholders and beneficiaries, and indeed never intended to keep those promises.

70. NCM knowingly and intentionally applied incorrect interest rates to thousands of policy loans it assumed, thus charging unsuspecting policyholders an interest rate higher than the agreed-upon rate. This conduct constitutes an intentional deception with a tendency to injure another.

71. NCM further knowingly and intentionally deceived its policyholders and increased its profits by accepting loan payments on Plaintiff's and Class Members' policy loans, but failing to apply the payments to the policy loan balances. Instead, NCM simply kept the payments and allowed the policy loan balances to increase.

72. NCM's conduct is shown to be even more deceptive, unscrupulous, and oppressive by its failure to provide accounting statements of payments and loan interest calculations to the policyholders and beneficiaries of the Assumed Policies.

73. NCM's conduct goes beyond a breach of contract. NCM's actions are aggravated by its knowing and intentional failure to secure the documents necessary to service the Assumed Policies, its decision to unilaterally apply a higher interest rate to the policy loans without the policyholders' knowledge or permission, its knowing and intentional failure to properly apply loan payments to reduce the policy loan balances and instead retain the payments as profit, and its misleading and deceptive failure to provide an accounting of these activities to its policyholders and beneficiaries.

15

Case 3:17-cv-00404   Document 1   Filed 03/01/17   Page 15 of 19 PageID #: 15

1336325.5

74. All of NCM's deceptive and unfair misconduct described above took place in and emanated from North Carolina, where NCM has its principal place of business, and where all of the decisions and actions resulting in the injury to Plaintiff and the Class took place.

75. The injury to Plaintiff and the Class has occurred largely in North Carolina because funds that should rightly be paid to the policyholders and beneficiaries are held in North Carolina. NCM's day-to-day business related to these policy loans took place in North Carolina. These decisions, including the decisions to unscrupulously and deceptively service the Assumed Policies, are made by NCM's management team, which is located in North Carolina. Such conduct affects North Carolina commerce by placing NCM in an unfair position against other companies and their policyholders. This conduct has more than a negligible effect on North Carolina commerce.

76. As a direct and proximate result of this unfair and deceptive conduct, Plaintiff and Class Members have been damaged and are entitled to a judgment against NCM for actual damages, and those damages are to be automatically trebled pursuant to N.C. Gen. Stat. § 75-16. Plaintiff and Class Members are also entitled to an award of attorney fees pursuant to N.C. Gen. Stat. § 75-16.1.

77. NCM's conduct also violates N.C. Gen. Stat. § 58–63–15(11)(h) because NCM attempted to settle the Assumed Policies for less than the amount that reasonable policyholders and beneficiaries would believe they were entitled. Violation of N.C. Gen. Stat. § 58–63–15(11)(h) constitutes a violation of North Carolina's Unfair or Deceptive Trade Practices Act, as a matter of law.

1336325.5

## COUNT THREE
## UNJUST ENRICHMENT

78. All allegations and paragraphs in this complaint are incorporated by reference. To the extent necessary, this cause of action is pled in the alternative to the other causes of action.

79. As described above, NCM has been unjustly enriched by pocketing loan payments made by Plaintiff and the Class and failing to apply the loan payments to reduce Plaintiff's and Class Members' policy loan balances, and also charging higher than agreed-upon interest rates on those unreduced loan balances, and then failing to pay the correct amount of policy proceeds to beneficiaries of the Assumed Policies.

80. Plaintiffs and other members of the Class unknowingly conferred a benefit on NCM of which NCM had knowledge, since NCM was aware of its own deceptive and misleading practices of failing to apply loan payments to reduce the loan balances and charging higher than agreed-upon interest rates on Plaintiff's and Class Members' policy loans, and failing to pay the correct amount of policy proceeds to beneficiaries of the Assumed Policies, but hid this behavior from Plaintiff and the other members of the Class while profiting from this deception.

81. The circumstances are such that it would be inequitable, unconscionable, and unjust to permit NCM to retain the benefit of profits that it unfairly obtained from Plaintiff and the other members of the Class. These profits include the loan payments paid towards policy loans on the Assumed Policies, as well as the excess interest that accrued as a result of NCM applying higher than agreed-upon interest rates to policy balances that were themselves too high because they had not been reduced by the amount of the loan payments.

17
1336325.5   Case 3:17-cv-00404   Document 1   Filed 03/01/17   Page 17 of 19 PageID #: 17

82. Plaintiff and the other members of the Class, having been damaged by NCM's conduct, are entitled to recover or recoup damages as a result of the unjust enrichment of NCM to their detriment.

**PRAYER FOR RELIEF**

Plaintiff, on behalf of herself and each member of the Class, seeks:

(1) an order certifying the proposed class and any appropriate subclasses, and appointing Plaintiff as class representative and Plaintiff's counsel as class counsel;

(2) actual damages;

(3) treble damages to the extent permitted by law;

(4) punitive damages;

(5) reasonable attorneys' fees and costs; and

(6) all other relief which the Court or jury should find appropriate.

//

//

//

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated: March 1, 2017                              Respectfully submitted,


                                                  s/ Mark P. Chalos

                                                  Mark P. Chalos (BPR # 19328)
                                                  Annika K. Martin
                                                  LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
                                                  150 Fourth Avenue, North, Suite 1650
                                                  Nashville, TN  37219-2423
                                                  Telephone:   (615) 313-9000
                                                  Facsimile:    (615) 355-9592
                                                  mchalos@lchb.com
                                                  akmartin@lchb.com

                                                  J. Bradley Ponder
                                                  Luke Montgomery
                                                  MONTGOMERY PONDER, LLC
                                                  2421 2nd Avenue North, Suite 1
                                                  Birmingham, AL 35203
                                                  Telephone:  (205) 201-0303
                                                  Facsimile:    (205) 208-9443
                                                  brad@montgomeryponder.com
                                                  luke@montgomeryponder.com

                                                  *Attorneys for Plaintiff and Proposed Class*