# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| MARIETTA MCCLENDON, on behalf of herself and all others similarly situated, | )<br>)<br>) |
| Plaintiff, | ) NO. 3:17-cv-00404<br>)<br>) JUDGE CAMPBELL |
| v. | )<br>) MAGISTRATE JUDGE BROWN |
| NORTH CAROLINA MUTUAL LIFE INSURANCE COMPANY, | )<br>)<br>) |
| Defendant. | ) |

## MEMORANDUM

Pending before the Court are three motions by Defendant seeking dismissal of the claims in Plaintiff's Second Amended Complaint and Plaintiff's Motion for Partial Summary Judgment. Prior to Plaintiff filing the Second Amended Complaint, Defendant moved for summary judgment on Plaintiff's claims of breach of contract, violation of the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA"), and unjust enrichment. (Doc. No. 79.)[1] Plaintiff's Second Amended Complaint (Doc. No. 108) added a claim for violation of the Alabama Deceptive Trade Practices Act ("ADTPA"). Defendant moved to dismiss the new ADPTA claim and the NCUDTPA claim. (Doc. No. 124.) Defendant then filed a Supplemental Motion for Summary Judgment (Doc. No. 130). Plaintiff filed her own Motion for Partial Summary Judgment seeking summary judgment on her claims for breach of contract and violations of the ADTPA. (Doc. No. 144.)

---

[1] Defendant filed a Motion to Clarify that the choice of law orders effectively dismissed the NCDTPA claims with prejudice (Doc. No. 69). The subsequently filed Motion for Summary Judgment (Doc. No. 79) and Motion to Dismiss (Doc. No. 124) assert the same argument.

For the reasons stated below, Defendant's motions for summary judgment are GRANTED in part and DENIED in part, Defendant's motion to dismiss the ADPTA and NCUDTPA claims is GRANTED, and Plaintiff's motion for partial summary judgment is GRANTED in part and DENIED in part.

## I. BACKGROUND

In 1984, Plaintiff's mother purchased a $10,000 whole life insurance policy from Protective Industrial Insurance Company of Alabama (the "Policy") to insure the life of Plaintiff's brother. (Am. Compl. at ¶ 36, Doc. No. 108.) The monthly premium for the policy was $17.06, which consisted of $15.46 for the preferred whole life premium that was to be paid for the duration of the policy, $0.50 per month for a waiver of premium rider benefit, and $1.10 per month for an accidental death benefit rider. (Doc. No. 82-1.) The policy riders had 27-year terms.

In 1995, Plaintiff's mother took out a loan against the policy in the amount of $1,533.90 at an interest rate of 5% ("Policy Loan"). (Am. Compl., Doc. No. 108 at ¶ 39; Policy Loan Disc. Stmt., Doc. No. 139-19.) The parties dispute the amount and frequency of payments made toward the loan. Defendant claims only two payments were made - $160 in 2004 and $400 in 2006. (Doc. No. 169-26.) Plaintiff claims additional payments were made and that the policy loan was entirely paid off. (McClendon Dep., Doc. No. 169-3 at 185-86.)

In 2009, Defendant acquired the Policy following the insolvency of the issuing company.[2] (Am. Compl. ¶ 17-20, Doc. No. 108.) Defendant continued to charge premiums for the policy riders after the rider term expired in 2011. From June 2011 to March 2016, Defendant

---

[2] The details regarding Defendant's acquisition of the policy are not relevant to the pending motions.

charged an additional $1.60 per month for policy riders covering Waiver of Premium and Accidental Death. (Am. Compl., Doc. No. 108 at ¶ 38.) Payments related to the policy riders during that period totaled $92.80. (*Id.*)

On March 16, 2016, Plaintiff's brother passed away. (Doc. No. 139-21.) At the time of his death, Plaintiff was the sole beneficiary on the life insurance policy. (Doc. No. 82-2.) Following the death of her brother, Plaintiff assigned the proceeds of the Policy to Roberts Funeral Services. (Assignment of Proceeds and Power of Attorney, Doc. No. 82-3.) The assignment of proceeds stated: "I hereby assign, set over and transfer to the said ROBERTS FUNERAL SERVICES, the sum of ten thousand dollars ($10,000) of the proceeds and or refund of premiums of the policy(ies) … which is or may be due me from the said Company as beneficiary of the said policy(ies)." (*Id.*) The document included a power of attorney appointing Roberts Funeral Services attorney in fact to endorse her name on the check representing the assigned proceeds. (*Id.*)

Defendant calculated that the benefit due on the policy was $4,896.46, representing the value of the Policy, minus the principal and 6% interest, and sent that amount to the funeral home on May 4, 2016. (Am. Compl., Doc. No. 108 at ¶ 41; Doc. No. 82-5.) Defendant corrected the interest calculation when it received loan documents specifying the correct interest amount was 5% and issued a check to Plaintiff in the amount of $299.36, representing the 1% difference in interest. (Am. Compl., Doc. No. 108 at ¶ 42.) Plaintiff was not satisfied with the explanation of the calculation and did not cash the check. (*Id.*)

Alleging that similar problems affected thousands of policy holders, Plaintiff filed a class action complaint against Defendant on behalf of herself and all others similarly situated. Plaintiff's Second Amended Complaint alleges breach of contract, unjust enrichment, violation

of the Alabama Deceptive Trade Practices Act, Ala. Code §8-19-1 *et seq*., and violation of the North Carolina Unfair or Deceptive Trade Practices Act, N.C. Gen Stat. § 75-1.1 *et seq*.[3]

## II. STANDARD OF REVIEW

### A. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for failure to state a claim upon which relief can be granted. For purposes of a motion to dismiss, a court must take all the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. In reviewing a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

In considering a Rule 12(b)(6) motion, the Court may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to Defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims. *Bassett v. National Collegiate Athletic Assn*., 528 F.3d 426, 430 (6th Cir. 2008).

---

[3] Following the ruling that Alabama law applies to the claims in this case, the Magistrate Judge granted leave to amend the complaint to add the claim of violation of the Alabama Deceptive Trade Practices Act. Plaintiff was not permitted to add claims for negligence per se, declaratory, injunctive, and equitable relief, fraud, or punitive damages. (Sept. 18, 2018, Order, Doc. No. 107.)

## B. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's claims. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers* 344 F.3d at 595.

## III. ANALYSIS

### A. Deceptive and Unfair Trade Practices

In the Second Amended Complaint, Defendant alleges claims of deceptive and unfair trade practices under the NCUDTPA and the ADTPA.

In a diversity action, state law governs the parties' claims. (Order on Choice of Law, Doc. No. 46 (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).) "Choice-of-law analysis in a diversity action is governed by the law of the state where the federal court sits." *In re Air Crash Disaster*, 86 F.3d 498, 540-41 (6th Cir. 1996) (*citing Klaxton Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Tennessee's choice-of-law rules will determine which state's unfair trade practices law applies to the claims in this case.[4] *See Premium Freight Mgmt., LLC v. PM Engineered Sols., Inc.*, 906 F.3d 403 (6th Cir. 2018) (applying Ohio choice of law rules to decide between Connecticut or Massachusetts laws prohibiting unfair trade practices).

The Magistrate Judge determined that that law of Alabama governs the contracts at issue in this case. However, the determination that Alabama law governs the contractual disputes does not foreclose the possibility that Plaintiff's unfair trade practices claim, which presents a mix of contracts and torts, is governed by North Carolina law. *See e.g., AutoZone, Inc. v. Glidden Co.*, No. 08-2851, 2011 WL 13229625 (W.D. Tenn. 2011) (applying Tennessee's choice of law provisions and concluding the laws of different states apply to the contract and tort claims).

Tennessee has adopted the "most significant relationship" test of the Restatement (Second) Conflict of Laws to choice-of-law questions for tort claims. *Orlowski v. Bates*, 146 F.Supp.3d 908, 921 (W.D. Tenn. 2015); *see also, AutoZone*, 2011 WL 13229625 at *3 (citing

---

[4] Plaintiff's assertion that the NCDTPA applies extraterritorially is not relevant to the Court's choice of law determination. Plaintiff cites *Hometown Pub. LLC v. Kidsville NewsA, Inc*., No. 5:14-cv-00076-FL, 2014 WL 7499450 (E.D.N.C. 2014) and *Hardee's Food Systems, Inc. v. Beardmore*, No. 5:96-cv-508-BR(2), 1997 WL 33825259 (M.D.N.C. 1997), in which North Carolina courts, not applying a choice of law analysis, determined that the North Carolina statute allowed for extraterritorial application in certain cases. The reach of the North Carolina statute is not the question here. The question is which state's deceptive trade practices law applies to the claims in this case.

*Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992)). The most significant relationship is determined by examining: (1) the place of the alleged injury; (2) the place where the injurious conduct occurred; (3) the domicile and/or place of business of the parties involved; and (4) the place where the relationship of the parties is centered. *Glennon v. Dean Witter Reynolds, Inc.*, 83 F.3d 132, 136 (6th Cir. 1996). These factors are to be evaluated according to their relative importance to the issue presented. Restatement (Second) Conflict of Laws § 145.

The Court finds that Alabama bears the most significant relationship to the unfair trade practices claims in this case. While the named parties are located in North Carolina and Tennessee, the vast majority of the Assumed Policies were signed, issued and delivered in Alabama to Alabama residents, therefore, the alleged injury is primarily to persons in Alabama. (Compl., Doc. No. 108 at ¶¶ 17, 21 (95% of the over 52,000 Assumed Policies were issued to Alabama residents).) Regarding this specific claim, the insured was located in Alabama and the payments toward policy premiums and loans were made in Alabama. While some of the alleged injurious conduct may have occurred in North Carolina by virtue of the Defendant's headquarters being located there, the relationship between the parties, which is grounded in the insurance contract, is centered in Alabama.

Alabama's interest is specific to the regulation of insurance activities and contracts in Alabama. Performance under the contract at issue is governed by the Alabama Insurance Code, including its provisions for unfair trade practices. *See* Ala. Code § 27-12-1. Moreover, while North Carolina unquestionably has an interest in assuring that its businesses do not engage in unfair trade practices, the state with the "strongest interest" in regulating unfair trade practices is the state where the harm occurred. *See Premium Freight Mgmt*., 906 F.3d at 408 ("the state

with the 'strongest interest' in regulating unfair trade practices, whether liability is imposed or foreclosed, is the state where the harm occurred.")

The Court gives significant weight to the fourth factor and notes that the parties' relationship is centered in Alabama. The circumstances of this case indicate that Alabama bears the most significant relationship to the parties and events that brought about the unfair trade practices claim in this action. Therefore, the Court will apply the Alabama unfair trade practices law.

**Alabama Deceptive Trade Practices Act**

Having determined that Alabama law governs the deceptive trade practices claim, the Court turns to Plaintiff's claims under the ADTPA. Defendant argues that Plaintiff's ADTPA claim fails to state a claim and should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Def. Motion to Dismiss, Doc. No. 124.) Plaintiff argues that not only should the claim survive, but the Court should grant partial summary judgment on the ADTPA claim because the facts establishing an ADTPA violation are undisputed. (Pl. Mot. for Partial Summ. J., Doc. No. 130.)

The Court first considers Defendant's argument that the allegations fail to state a claim for each of four independent reasons: (1) the ADTPA exempts persons and activities subject to the provisions of the Alabama Insurance Code (Ala. Code § 27-1-2); (2) Plaintiff is not a consumer within the meaning of the ADTPA; (3) loans are not goods or services covered by the ADTPA; and (4) the ADTPA does not allow for class actions.

The ADTPA allows consumers to pursue a private cause of action against any person who undertakes deceptive trade practices related to "goods or services for personal, family, or household use." *See* Ala. Code §§ 8-19-3(2) and 8-19-10. The ADTPA excludes from liability

8

"[a]ny person or activity which is subject to the provisions of the Alabama Insurance Code, Title 27, as amended[.]" Ala. Code § 8-19-7(3).

Plaintiff does not contest that Defendant is an insurance provider subject to the provisions of the Alabama Insurance Code. Plaintiff argues, however, that Defendant's provision of loans on the life insurance policy are not excluded from the ADTPA because the provision of loans does not "constitute the business of insurance."

The Court disagrees. Whether or not the provision of life insurance loans constitutes the "business of insurance," the Alabama Insurance Code contains specific regulations related to life insurance loans, such as the one at issue in this case. *See* Ala. Code § 27-15-8. Life insurance loans are, therefore, an "activity which is subject to the provisions of the Alabama Insurance Code" exempt from the ADTPA.[5] There is no ambiguity in the statute requiring the Court to consider whether the provision of loans constitutes the "business of insurance."

Moreover, even absent the exclusion for activities regulated by the Insurance Code, loans are not goods or services under the ADTPA. *See Deerman v. Fed. Home Loan Mortgage Corp.*, 955 F. Supp. 1393, 1399 (N.D. Ala. 1997) ("No court has held that a loan is a good or service under this statute and this court will not be the first to do so. This court is of the opinion, therefore, that a mortgage loan is not a good or service under the Alabama DTPA."); s*ee also*, *Meadows v. HSBC Mort. Corp.*, 2011 WL 13134199 at \*6 (N.D. Ala. 2011); *Thomason v. One West Bank, FSB*, 2017 WL 4341863 (M.D. Ala. 2017).

---

[5] The case law cited by Plaintiff in support of the argument that loans are not "the business of insurance" is not applicable here. These cases address whether the federal McCarron-Ferguson Act, which reserves to the states the regulation of insurance, pre-empts federal regulations that would otherwise have the effect of regulating the insurance industry. That is not the circumstance here, where the Court must interpret two state laws.

Having determined Plaintiff's claim under the ADTPA act is foreclosed by the exception for persons and activities subject to the provisions of the Alabama Insurance Code, the Court does not consider Defendant's additional arguments related to Plaintiff's ADTPA claim.

### B. Unjust Enrichment

Defendant argues the existence of a valid contract forecloses Plaintiff's claim for unjust enrichment. Plaintiff responds that she can plead unjust enrichment in the alternative and that her claim for unjust enrichment should only be dismissed if she prevails on the claim for breach of contract.

Unjust enrichment is an equitable remedy applicable only where there is no adequate remedy at law. *Univalor Trust, SA v. Columbia Petroleum, LLC*, 315 F.R.D. 374, 382 (S.D. Ala. 2016). Unjust enrichment may be pleaded in the alternative only where the validity of a contract is challenged, but not where a plaintiff alleges breach of an enforceable contract. *Blackmon v. Renasant Bank*, 232 So. 3d 224, 228 n. 4 (Ala. 2017). Plaintiff agrees "pleading in the alternative is meant to allow for a plaintiff's case to proceed in the face of uncertainty as to the existence of a contract or, perhaps whether the particular issue at hand falls within the ambit of a contract that otherwise exists between the parties." (Doc. No. 91 at 10 (citing *Donnelly v. Circuit City Stores, Inc.*, 2007 WL 896337 at *3 (M.D. Fla. 2007)).

Plaintiff has brought a claim for breach of contract and neither party contests the existence or validity of the insurance policy or loan agreement. *See* Plaintiff's Br., Doc. No. 140 ("[T]here is no dispute here that the Assumed Policies are valid contracts binding the parties."). Accordingly, Plaintiff cannot also bring a claim for unjust enrichment. Her dispute sounds in contract.

### C. Breach of Contract

#### 1. Assignment

Defendant argues that Plaintiff's assignment of the proceeds of the Policy to the funeral home extinguished all of her substantive rights in the Policy and Plaintiff no longer possesses an enforceable interest in the Policy.

The Court disagrees. The Assignment of Proceeds was just that – an assignment of the *proceeds* of the policy. The assignment states: "I hereby assign, set over and transfer to the said ROBERTS FUNERAL SERVICES the sum of ten thousand dollars of the proceeds and or refund of premiums of the policy[.]" (*See* Doc. No. 82-3.) Nothing in the assignment purports to assign the Policy itself or all rights under the Policy. Moreover, even with regard to the proceeds, Plaintiff, who assigned the proceeds of the policy to pay for her brother's funeral, retains an interest in ensuring that the proceeds are properly calculated.[6]

#### 2. Breach

To prove a claim for breach of contract under Alabama law, Plaintiff must prove four elements: "(1) the existence of a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) damages." *Harp Law, LLC v. LexisNexis*, 196 So. 3d 1219, 1224 (Ala. Civ. App. 2015) (quoting *Capmark Bank v. RGR, LLC*, 80 So.3d 1258, 1267 (Ala. 2011)). The parties do not dispute the validity of the Policy or loan agreement. Plaintiff alleges Defendant breached the Policy by: (1) charging premiums for riders past their term; (2) applying an incorrect interest amount to loans taken

---

[6] Defendant does not dispute that prior to Plaintiff assigning the proceeds of the Policy to the Funeral Home, she was a third-party beneficiary of the Policy, and, upon the death of the insured under the Policy (Plaintiff's brother), she had a vested right and interest in the Policy. (Def. Br., Doc. No. 80 at 9.)

against the policy; and (3) failing to properly credit payments to the loan balance. Plaintiff moved for summary judgment on the breach of contract claim.

Defendant does not dispute that it applied an incorrect interest rate to the loan amount. In fact, Defendant attempted to refund the overcharge by sending Plaintiff a check for $299.36. (Doc. No. 108 at ¶ 42.) Plaintiff did not cash the check. (*Id.*)

Defendant argues that the six-year statute of limitations applicable to contract claims bars recovery for breach prior to March 2011 and that inaccuracies in the policy application raise a question of fact regarding whether Defendant was obligated to pay the policy at all. In addition, Defendant denies that it breached the rider agreements by continuing to bill for the policy riders and denies that it failed to credit loan payments to the loan balance.

### a. Inaccuracies in the policy application

Defendant argues that it may not have been obligated to pay on the Policy at all because of inaccuracies in an insurance application. This argument, which attempts to raise fact issues for a jury and implies that Plaintiff suffered no damages, is contrary to Alabama insurance law. Under Alabama law, life insurance policies are incontestable after a maximum of two years, even if the application contains material misstatements. Ala. Code §27-15-4.

### b. Statute of Limitations

Defendant raises a statute of limitations defense in response to Plaintiff's motion for summary judgment for breach of contract. Accordingly, even if the Court finds that some or all of Plaintiff's breach of contract claim is barred by the statute of limitations, the result is only that Plaintiff's motion for summary judgment will be denied for the part of her claim that is time-barred. Had Defendant raised a successful statute of limitations argument in one of its motions, any time-barred portion of the claim could be dismissed.

Defendant argues that allegations of breach occurring prior to March 1, 2011, are time-barred. The statute of limitations for contract claims is six years. Ala. Code § 6-2-34(9). The statute of limitations begins to run from the time the breach occurs, even if damages are sustained at a later date. *McCall ex rel. McCall v. Household Fin. Corp.*, 122 So. 3d 832, 836 (Ala. Ct. App. 2013). "The cause of action 'accrues' as soon as the party in whose favor it arises is entitled to maintain an action." *Payton v. Monsanto Co.*, 801 So.2d 829, 835 (Ala. 2001) (quoting *Garrett v. Raytheon Co.*, 368 So.2d 516, 518-19 (Ala. 1979)). It is of no consequence that Plaintiff herself may have been unaware of the facts giving rise to the claim; the discovery rule in Alabama is applicable only to fraud actions. *Henson v. Celtic Life Inc. Co.*, 621 So.2d 1268 (Ala. 1993).

Plaintiff has alleged three different grounds for breaches of contract. With regard to the application of an incorrect interest rate, a breach, if any, occurred at the time the interest was calculated and applied to the account. It appears from the loan transaction history submitted by Defendant (Doc. No. 169-26) that loan interest was calculated annually on June 1. If so, the claim related to interest accrual before 2011 is barred by the statute of limitations.[7] The statute of limitations does not bar claims related to the continued billing and payment on the rider agreements. The 27-year term on the rider agreements ended in June 2011, and Plaintiff only contests payments made after that date, which is within the six-year term. Plaintiff's claim that payments made on the loan were not applied to the loan balance survives the six-year statute of limitations only to the extent the payments were made after March 2011.

---

[7] The Court notes that the amount of interest excluded is less than $75.

### c. Interest Rate Calculation

Defendant does not contest that it breached the contract regarding the calculation of interest on the loan, but successfully argues that the statute of limitations may bar Plaintiff's claim with regard to interest calculations prior to 2011. Accordingly, summary judgment on this part of the breach of contract claim is granted in Plaintiff's favor with regard to interest calculations made within the six-year statute of limitations.

### d. Policy Riders

The Policy included two riders with 27-year terms: a waiver of premium benefit ($0.50 per month) and an accidental death benefit ($1.10 per month). Plaintiff argues that Defendant breached the Rider agreement when it continued to charge premiums for the riders beyond the 27-year term, which ended in June 2011. Defendant was paid a total of $92.80 for these riders between June 2011 and Mr. McDaniel's death in 2016.

Defendant argues the continued billing and payments was not a breach of contract. Instead, Defendant maintains, continued performance under the original terms of the agreement constituted a mutual extension of the terms of the rider agreements beyond the original 27 years. Defendant contends that when it accepted payment for the riders, it incurred the obligation to pay should the precipitating events come to pass. Plaintiff claims that charging rider premiums beyond the 27-year term was not a mutual extension, but a "secret, unilateral, impermissible contract change." (Doc. No. 182 at pp. 4-5.)

In Alabama, parties who have entered into a contract who continue their respective performances under the terms of the contract beyond the expiration date of the contract, are deemed to have mutually agreed to a new implied contract encompassing the same terms. *Gafnea v. Pasquale Food Co., Inc.*, 454 So.2d 1366, 1369 (Ala. 1984).

The Court finds that the continuing payment and acceptance of payment of premiums for the riders extended the benefits under those riders beyond the original 27-year term. If the insured had in fact suffered a qualifying event, e.g. accidental death, his beneficiary would have been entitled to payment pursuant to the policy rider. That Defendant continued to bill and accept payments for the policy riders does not constitute a breach of contract.

Accordingly, on the issue of payments related to the policy riders, Plaintiff is not entitled to summary judgment. Because Defendant has not moved for summary judgment on this basis, the Court's ruling is limited to denying Plaintiff's motion for summary judgment on breach of contract related to the policy riders.

### e. Application of Loan Payments to the Policy

Plaintiff alleges payments were made toward the policy loan that were either not credited to the account or were improperly applied as premium payments rather than payments toward the policy loan. She claims that the loan had been paid in full and she was entitled to the full $10,000 of the policy benefit. (*See* McClendon Dep., Doc. No. 169-3 at 185-86.) Defendant claims that it properly credited the two loan payments it received and submitted a spreadsheet of the "loan transaction history" showing loan payments totaling $560 in 2004 and 2005. (Doc. No. 169-26.)

Plaintiff has failed to establish that there is no dispute of material fact as to the application of loan payments. Accordingly, Plaintiff's motion for summary judgment for breach of contract regarding the application of loan payments is denied.

### IV. CONCLUSION

For the reasons stated, Plaintiff's claim under the North Carolina Unfair or Deceptive Trade Practices Act is DISMISSED; the claim under the Alabama Deceptive Trade Practices

Act is DISMISSED; and the claim for unjust enrichment is DISMISSED. Plaintiff's motion for summary judgment as to the breach of contract is GRANTED with regard to the calculation of interest within the period of the statute of limitations and DENIED with regard to the policy riders and with regard to the application of loan payments.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE